# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

YUSEF LATEE WILLIAMS,

    Plaintiff,

v.                                                 Case No. 08-C-721

CORRECTIONAL OFFICER B. MIERZEJEWSKI,
and CAPTAIN BRUCE MURASKI,

    Defendants.

ORDER GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOC. # 46), FOR LEAVE TO FILE AN AMENDED ANSWER (DOC. # 24), AND TO STAY DISCOVERY (DOC. # 28); DENYING THE DEFENDANTS' MOTION TO DISMISS (DOC. # 27); GRANTING THE PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME (DOC. # 31 AND # 33) AND TO ADMIT EVIDENCE (DOC. # 61); DENYING THE PLAINTIFF'S MOTIONS TO STRIKE (DOC. # 34), TO COMPEL (DOC. # 41), FOR DAILY LIBRARY (DOC. # 33), FOR SUMMARY JUDGMENT (DOC. # 37), AND DISMISSING CASE

        Plaintiff, Yusef Williams, an inmate at Waupun Correctional Institution, is proceeding *pro se* under 42 U.S.C. § 1983 on a claim that defendants Mierzjewski and Muraski unlawfully interfered with his outgoing mail in violation of his First and Fourteenth Amendment rights.

## I. SUMMARY JUDGMENT STANDARD

        Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating entitlement to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every

conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

II. FACTS

The plaintiff, Yusef Latee Williams, is a Wisconsin state inmate confined at Waupun Correctional Institution (WCI). Defendants Bruce Muraski and Bret Mierzejewski are employed at WCI. Mierzejewski is a Correctional Officer and Muraski is a Captain and a certified Gang Specialist for the Wisconsin Department of Corrections.

Williams was on "mail monitor" from July 11, 2002, to August 7, 2002, because he was believed to have a significant role with the Vice Lords gang. According to Williams, he was not a member of the Vice Lords in 2002 and did not possess a significant role in that group. On July 11, 2002, Officer Mierzejewski examined a piece of outgoing non-legal mail from Williams to Wenelo Alizea and informed Captain Muraski of its contents. The letter stated in part,

> Papo, this is what I need you to handle for me when your time permits, go on the deck I'm off of, Campbell and Flournoy and holla at my chief, his name is Rob McIntosh, every and anybody will know who your talking about, it's only one Rob that has that deck. He probably will be standing out on the deck anyway, but if he's not, one of the brothaz will take you to where he's at, plus you know that since your off Cortez your welcomed on the deck. The deck is a 24 hour money getting tip, you feel me, so there's always sombody out. You can holla at any of the homies standing on Lexington and Campbell, Flournoy and Campbell or Harrison and Campbell, but more than likely everybody will be on Flournoy. I think Rob was in the Ville the same time Gino was, so you got something in common too...

(Exhibit 1000, Attachment 1 to the Affidavit of Bret Mierzejewski, Docket # 53-1). According to the defendants, the terms "deck" and "chief" are gang terms and Captain

3

Muraski recognized that Williams was directing an individual to go to an specific geographic area or "deck" in Chicago where a set of the Vice Lords are located, and speak with a gang leader or "chief." According to Williams, these are merely slang words meaning "neighborhood" and "cousin."

Captain Muraski seized the letter and prevented it from being delivered because he deemed it to be gang-related, and therefore incompatible with Williams's rehabilitation goals, as well as a potential security concern if it created an impression that the institution was tolerating gang activity. Williams was not given a "Notice of Non-Delivery" 243 form, but on July 22, 2002, Williams received a conduct report from Officer Mierzejewski regarding the letter's gang-related references. Williams had a hearing on the conduct report on August 12, 2002, at which Mierzejewski testified, at Williams's request. The hearing officer found Mierzejewski's testimony credible and issued a disciplinary sentence that included disposing of the letter as contraband.

Meanwhile, on July 26, 2002, Williams filed an offender complaint regarding the letter's non-delivery and the failure to provide him with a notice of non-delivery. The Inmate Complaint Examiner ("ICE") received Williams's offender complaint on July 29, 2002. On September 11, 2002, the ICE recommended that Williams's offender complaint be affirmed with modification, but the Corrections Complaint Examiner ("CCE") recommended dismissal on September 23, 2002, reasoning that the conduct report itself served as notice of the letter's non-delivery. The Office of the Secretary accepted the CCE's decision and dismissed Williams's offender complaint the same day.

## III. ANALYSIS

Williams was permitted to proceed in this case on a claim that defendants Mierzejewski and Muraski unlawfully interfered with his mail in violation of his First Amendment right to freedom of speech and his Fourteenth Amendment right to due process. The defendants filed a motion to dismiss, contending that this action is barred by Wisconsin's six-year limitations period for pursuing § 1983 claims. The defendants also filed a motion for summary judgment on the merits, as did Williams.

### A. Statute of Limitations

The defendants contend that Williams's complaint should be dismissed because his claim accrued when they confiscated his letter on July 11, 2002, yet he did not file this lawsuit until August 26, 2008, after the six-year statute of limitations had expired. Williams responds that equitable tolling applies and this lawsuit was timely filed, as his claim did not fully accrue until he finished exhausting his administrative remedies. In reply, the defendants state, without elaboration, that their "argument is based on sound legal theory." (Doc. # 42 at 4).

Section 1983 does not contain its own statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims, and the forum state's tolling rules. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). The statute of limitations for § 1983 claims in Wisconsin is six years. *Malone v. Corrections Corp. of America*, 553 F.3d 540, 542 (7th Cir. 2009). Like the Illinois tolling statute that applied in *Johnson*, Wisconsin's tolling statute states,

> When the commencement of an action is stayed by an injunction, order of court, or *statutory prohibition*, the time of

5

> the continuance of the injunction or *prohibition* is not part of the
> time limited for the commencement of the action.

Wis. Stat. § 893.23 (emphasis added). Because the Prison Litigation Reform Act requires prisoners to exhaust their administrative remedies prior to filing suit, federal courts "must toll the limitations period while a prisoner completes the administrative grievance process." *Johnson,* 272 F.3d at 522; *see also Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) ("the limitations period is tolled while a prisoner completes the administrative grievance process"). Thus, this action was commenced within the statute of limitations, which was tolled from July 26, 2002, when Williams filed his offender complaint regarding the non-delivery of his letter, until September 23, 2002, when the Secretary dismissed that complaint.

### B. Summary Judgment on the Merits

Williams contends that the defendants' undisputed failure to provide him with a Form-243 notice of non-delivery entitles him to summary judgment. On the other hand, the defendants offer that their seizure and non-delivery of Williams's letter was logically connected to substantial governmental interests of security, order, and rehabilitation which did not violate Williams's limited First Amendment rights, and that they provided Williams with adequate notice and a chance to appeal their action.

#### 1. Failure to Provide a Form-243 Notice of Non-Delivery

Wisconsin Administrative Code DOC § 309.04(4) sets forth various restrictions imposed by the Department of Corrections on inmate correspondence, and states that in the case of non-delivered mail, "[i]f the letter is outgoing mail, the department shall provide the sender a notice stating why the letter was not delivered." Wis. Admin

Code DOC § 309.04(4)(e)(2).  The Department's Internal Management Procedures further direct staff to "[c]omplete DOC-243 for mail not delivered, and DOC-9/DOC-98 if necessary."  DOC 309 IMP 4(A)(4).

It is undisputed that Williams did not receive a DOC-243 (Notice of Non-Delivery) form, and that he did receive a DOC-9 (Adult Conduct Report) form.  The conduct report identified and described the letter seized by the defendants and stated that "[a]ll contraband will be provided to the due process hearing officer for their review."  (Adult Conduct Report, Doc. # 53-4 at 2).

The Seventh Circuit has stated:

> The argument that the procedures established by the [DOC] regulations can themselves be considered a liberty interest is analytically indefensible.  We have repeatedly observed [that] [p]rocedural protections or the lack thereof do not determine whether a property right exists. . . .  A liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality. . . .

*Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982).  Here, the defendants failed to provide Williams with one of the forms prescribed by their employer, the DOC.  However, Mierzejewski still notified Williams that his letter was seized, and described the reasons for the seizure.  Hence, Williams had more than a theoretical opportunity to contest the seizure of his letter.  He had a hearing, compelled Mierzejewski to testify, and fully pursued the prison's administrative grievance process regarding the non-delivery of his letter.  Under these circumstances, Williams's challenge to the defendants' failure to provide him with form DOC-243 demands the type of "needless formality" that cannot establish a constitutional violation.  The same is true of his contention that his rights were violated because a second-shift officer reviewed his mail rather than a third-shift officer.

7

2. Seizure of Mail Due to Alleged Gang References

The Supreme Court and the Seventh Circuit Court of Appeals have "recognized that prisoners have protected First Amendment interests in sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989) and *Turner v. Safley*, 482 U.S. 78 (1987)). The Supreme Court set forth a standard for determining the permissibility of limitations on inmate correspondence in *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). Although *Martinez* was overturned in part by *Thornburgh*, "censorship of an inmate's outgoing mail still is scrutinized under the standard espoused in *Martinez*." *Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006). That standard has two prongs:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. . . . Such interests include security, order, and rehabilitation. Second, the challenged action must be no greater than is necessary or essential to the protection of that interest.

*Id.* (quoting *Martinez*, 416 U.S. at 413).

In *Koutnik*, the Seventh Circuit upheld a grant of summary judgment to prison officials who confiscated a prisoner's outgoing mail that contained a swastika and capitalized Ks that officials perceived as a reference to the Ku Klux Klan. In concluding that the prisoner's First Amendment rights were not violated by the seizure of his letter, the Seventh Circuit noted that "[t]here is no question that the rehabilitation of inmates is a legitimate interest of penal institutions," and held that "[w]ith respect to whether Mr. Koutnik's mail to Northern Sun contained gang-related symbols, we believe that this is an assessment that prison staff is uniquely suited to make." 456 F.3d at 784-85.

8

In this case, the parties disagree whether Williams was affiliated with a gang, and whether certain words in the seized letter were gang references or simply slang. Under *Koutnik*, however, it is irrelevant whether Williams was a gang member (Koutnik apparently was not) – what matters is that prison staff, with relevant expertise reasonably assessed language in his letter as gang-related. In these areas, "courts owe substantial deference to the professional judgment of prison administrators." *Id.* at 785. Sending letters with specific, perceived gang references is "not an effort to establish constructive, wholesome contact with the outside community that would foster successful reintegration into society," and seizure of such a letter "further[s] the important or substantial governmental interest in rehabilitation." *Id.* at 785-86 (internal quotations and citations omitted). Therefore, Williams's denial of gang membership and assertion that his letter contains only slang is inadequate to defeat summary judgment.

IV. OTHER MOTIONS

A few disputed motions remain. First, the plaintiff's motion to strike the defendants' motion to dismiss (Doc. # 34) assumed incorrectly that the defendants were required to follow inapplicable summary judgment procedures, as the motion to dismiss did not present matters outside of the pleadings. Rather than striking the motion to dismiss, this order denies it for the reasons discussed previously. Additionally, the plaintiff's motion to compel additional discovery (Doc. # 41) is now moot, inasmuch as summary judgment is being granted in favor of the defendants.

The plaintiff sought to compel the defendants to more fully answer interrogatories regarding whether law enforcement had contacted them regarding his mail, the methodology and sources used to identify him as belonging to an unsanctioned group,

9

and whether any judgments had ever been awarded against the defendants. Moreover, the plaintiff sought to inspect his prison file and the staff rule book. In response, the defendants informed the plaintiff of the procedure for inspecting his file, and provided copies of the rules he requested. None of this information would affect the outcome of this decision granting summary judgment to the defendants.

The parties also filed various unopposed motions. Therefore,

IT IS ORDERED that the defendants' motion for summary judgment (Doc. # 46) is GRANTED.

IT IS FURTHER ORDERED that the defendants' motion for leave to file an amended answer (Doc. # 24), the defendants' motion to stay discovery and the dispositive motions deadline (Doc. # 28), the plaintiff's two motions for extension of time (Doc. # 31 and # 33), and the plaintiff's motion for admission of evidence (Doc. # 61), are GRANTED.

IT IS FURTHER ORDERED that the defendants' motion to dismiss (Doc. # 34), and the plaintiff's motions for daily library access (Doc. # 33), to strike (Doc. # 34), for summary judgment (Doc. # 37), and to compel discovery (Doc. # 41), are DENIED.

IT IS FURTHER ORDERED that this action is DISMISSED.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2010.

        BY THE COURT

        /s/ C. N. Clevert, Jr.
        C. N. CLEVERT, JR.
        Chief U.S. District Judge

10

Case 2:08-cv-00721-CNC    Filed 02/28/10    Page 10 of 10    Document 69

and whether any judgments had ever been awarded against the defendants. Moreover, the plaintiff sought to inspect his prison file and the staff rule book. In response, the defendants informed the plaintiff of the procedure for inspecting his file, and provided copies of the rules he requested. None of this information would affect the outcome of this decision granting summary judgment to the defendants.

The parties also filed various unopposed motions. Therefore,

IT IS ORDERED that the defendants' motion for summary judgment (Doc. # 46) is GRANTED.

IT IS FURTHER ORDERED that the defendants' motion for leave to file an amended answer (Doc. # 24), the defendants' motion to stay discovery and the dispositive motions deadline (Doc. # 28), the plaintiff's two motions for extension of time (Doc. # 31 and # 33), and the plaintiff's motion for admission of evidence (Doc. # 61), are GRANTED.

IT IS FURTHER ORDERED that the defendants' motion to dismiss (Doc. # 34), and the plaintiff's motions for daily library access (Doc. # 33), to strike (Doc. # 34), for summary judgment (Doc. # 37), and to compel discovery (Doc. # 41), are DENIED.

IT IS FURTHER ORDERED that this action is DISMISSED.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge